**FISHER–PRICE, INC., Plaintiff,**

v.

**SAFETY 1ST, INC., et al., Defendants.**

**No. Civ.A. 01–51.**

United States District Court,
D. Delaware.

Aug. 28, 2003.

Patricia Smink Rogowski and Francis DiGiovanni of Connolly, Bove, Lodge & Hutz LLP, Wilmington, Delaware, William E. Wallace III, Robert W. Busby, Jr., and Christopher Guest of Milbank Tweed Hadley & McCloy LLP, Washington, D.C., of counsel, for plaintiff.

Frederick L. Cottrell, III of Richards, Layton & Finger, Wilmington, Delaware, James J. Foster, Michael A. Albert, Robert M. Abrahamsen of Wolf, Greenfield & Sacks, P.C., Boston, Massachusetts, of counsel, for defendants.

### MEMORANDUM OPINION

SLEET, District Judge.

## I. INTRODUCTION

On January 26, 2001, Fisher–Price, Inc. ("Fisher–Price") filed suit against Safety 1st, Inc. ("Safety 1st"), Dorel Juvenile Group, Inc., and Dorel Design and Development, LLC (collectively "Safety 1st" or "the defendants"), alleging infringement of several patents. The patents-in-suit, United States Patent Nos. 5,660,435 ("the '435 patent"), 5,947,552 ("the '552 patent"), 6,257,659 ("the '659 patent"), 6,247,755 ("the '755 patent"), and 431,940 ("the '940 patent"), relate generally to various carriers, strollers, and bassinets for infants. The accused products are the Magic Motion Bassinet ("Magic Motion") and the 2-in-1 Bouncenette ("Bouncenette").[1]

Safety 1st asserted the affirmative defense of invalidity as to the '755, '940, '435 and '552 patents. The court held a *Markman* hearing and issued an order construing the disputed terms of the '435, '552,

and '659 patents on April 2, 2002.[2] The court granted summary judgment in favor of Safety 1st with respect to infringement of the '435, '552, and '659 patents, holding Fisher–Price did not meet its burden of proof for infringement under the doctrine of equivalents. *See Fisher–Price, Inc. v. Safety 1st, Inc.,* 2002 WL 1307333, 2002 U.S. Dist LEXIS 10569 (D.Del.2002).

A jury trial commenced on January 13, 2003. Following the trial, the jury returned a verdict finding that: (1) the Bouncenette and Magic Motion products infringe claim 36 of the '552 patent; (2) claim 36 is not invalid due to obviousness or anticipation of prior art; (3) Safety 1st's Magic Motion Bassinet product infringes claims 1 through 12 of the '659 patent; (4) Safety 1st's 2-in-1 Bouncenette and Magic Motion Bassinet products infringe claims 1 through 16 of the '755 patent; (5) the '755 patent is not invalid due to an inadequate written description; (6) Safety 1st's 2-in-1 Bouncenette infringes the '940 design patent; (7) the '940 and '755 patents are not invalid due to the on-sale bar; (8) Fisher–Price began marking substantially all products with the '940 patent number on November, 16, 2000; (9) Safety 1st's infringement was willful; (10) Fisher–Price is entitled to lost profits damages totaling $1,000,000; and (11) Fisher–Price is entitled to $900,000 in damages for profits Safety 1st made from the infringement of the '940 design patent. *See* Jury Verdict (D.I.279).

During trial, both parties properly moved for judgment as a matter of law

---

1. There are three versions of the Bouncenette. For clarity and ease of reference, the court will refer to them as Bouncenettes 1, 2, and 3. Bouncenette 1, the first design, was sold under model numbers 43002 and 43006. Following certain design modifications, the Bouncenette 2 followed, sold under model numbers 43002A and 43006A. A third gener-

ation of the product followed, which the court will refer to as Bouncenette 3. The Bouncenette 3 was sold under model numbers 25006, 25105, and 43002.

2. There are no disputed claim terms in the '755 or '940 patents.

("JMOL") pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The court reserved judgment on all JMOL motions. Following the jury's verdict, the parties filed eight post-trial motions pursuant to Rule 50(b). Of these, the court will address the following motions in this memorandum: the defendants' Renewed Motion for Judgment as a Matter of Law on Various Issues (D.I.312); the defendants' Renewed Motion for Judgment of Invalidity of the '755 and '940 Patent as a Matter of Law Because of the On–Sale Bar (D.I. 309); the plaintiff's Motion for Enhanced Damages, Pre–Judgment Interest, Post–Judgment Interest, Attorneys' Fees and Literal Infringement of Claims 26, 27 and 32–34 of the '552 Patent and a New Trial on Certain Issues (D.I.302); and the defendants' Motion for a New Trial (D.I.306). In companion memoranda and orders, the court will address the remaining four post-trial motions.

## II. STANDARDS OF REVIEW

### A. Renewed Motion for Judgment as a Matter of Law

■■■ Pursuant to Federal Rule of Civil Procedure 50, a court may render judgment as a matter of law after the moving party is fully heard on an issue at trial, if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (citation omitted). If the court denies a motion for JMOL during trial, the motion may be renewed within ten days of entry of judgment in the case. FED. R. CIV. P. 50(b). To prevail on a renewed motion for JMOL following a jury trial, a party " 'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported

by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed.Cir.1998) (quoting *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir.1984)). " 'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin–Elmer Corp.*, 732 F.2d at 893. In assessing the sufficiency of the evidence, the court must draw all reasonable inferences from the evidence in the light most favorable to the nonmovant. *Id.; Richardson–Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir.1997). The appropriate inquiry is whether a reasonable jury, given the facts before it, could have arrived at the conclusion it did. *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed.Cir. 1998). The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin–Elmer Corp.*, 732 F.2d at 893.

### B. Motion for a New Trial

■■ The plaintiff moves for a new trial on the issue of damages only. The court may grant a new trial pursuant to Federal Rule of Civil Procedure 59 "for any of the reasons for which new trials have heretofore been granted in actions of law in the courts of the United States." FED. R. CIV. P. 59(a). A court should grant a new trial in a jury case, however, only if "the verdict was against the weight of the evidence ... [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir.1991). In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts. *Lind v.*

*Schenley Industries, Inc.*, 278 F.2d 79, 89 (3d Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960)

## III. DISCUSSION

### A. Defendants' Renewed Motion for Judgment as a Matter of Law on Various Issues

#### 1. Literal Infringement of the '52 Patent

Safety 1st moves for judgment as a matter of law to reverse the jury's finding that the Magic Motion and three Bouncenette products infringe claim 36 of the '552 patent. The defendants argue that they are entitled to judgment as a matter of law because there is no dispute concerning the structure of the products. Rather, the dispute lies only in claim construction, which is a question of law for the court.

Literal infringement[3] of a claim occurs when every limitation recited in the claim appears in the accused device, *i.e.*, when "the properly construed claim reads on the accused device exactly." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1358 (Fed.Cir.2000). Infringement analysis is a two step process in which the court first construes the claims as a matter of law. *Eaton Corp. v. Parker–Hannifin Corp.*, 243 F.Supp.2d 77, 86 (D.Del.2003). The properly construed claims are then compared to the accused device to determine, as a question of fact, whether all of the claim limitations are present in the accused device. *Id.* At trial, Fisher–Price bore the burden of proving by a preponderance of the evidence that the accused products include each limitation of claim 36 of the '552 patent. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570,

1575 (Fed.Cir.1995). With that legal framework in mind, the court will briefly review claim 36.

The '552 patent relates to a collapsible bassinet with a canopy in which a child can sit up or lie down according to the position of the product. The patent specifically addresses the invention's ability to fold and become compact for portability. Claim 36, the only asserted claim, reads:

An infant-supporting device convertible between a compact configuration and an [sic] deployed configuration, comprising:

a suspension assembly including a first substantially U-shaped member and a second substantially shaped U-shaped member releasably connected to each other at their ends, wherein the second member is disposed apart from the first member in the deployed configuration and substantially adjacent the first member in the compact configuration;

a collapsible support frame movably connected to the suspension assembly, wherein the support frame supports the suspension assembly above a supporting surface in the deployed configuration and the support frame is disposed substantially adjacent the first rim member in the compact configuration; and

a receptacle for supporting an infant including a support surface and an annular side wall with an upper edge connected to the suspension assembly and a lower edge connected to the support surface, the support surface having a first end and a second end movably connected to the first end, wherein the receptacle is suspended from the support assembly above the supporting surface in the deployed configuration and the

---

**3.** Following summary judgment, only a theory of literal infringement remained in the case. *See Fisher–Price*, 2002 WL 1307333, at *17, 2002 U.S. Dist LEXIS 10569, at *50–52

(granting summary judgment to the defendants as to infringement pursuant to doctrine of equivalents).

first end of the support surface is disposable at an angle relative to the second end and a pair of receptacle support straps are attached to the receptacle and are interconnected to support the first end at the angle, the suspension assembly, support frame and the receptacle being convertible together between the compact configuration and the deployed configuration.

The jury found that Safety 1st's Magic Motion and all three models of the Bouncenette product infringe claim 36.

### a. Safety 1st's "Interconnected Straps" Argument

■ Safety 1st argues that JMOL of non-infringement of claim 36 is warranted by the plain language and the court's construction of claim 36. Claim 36 claims a device with "a pair of receptable [sic] support straps [that] are attached to the receptacle and are interconnected to support the first end at the angle." The defendants argue that none of the accused products includes such a pair of support straps.

### 1. Bouncenettes 1 and 2 and the Magic Motion

At trial, the plaintiff presented evidence of literal infringement of claim 36 of the '552 patent. For example, Fisher–Price adduced testimony of a technical expert, Professor Steven Visser. Visser is an expert in industrial design and is a named inventor on three unrelated design patents. Using models and other demonstratives, Visser compared the patent claim language to the accused products, ultimately concluding that Safety 1st's products infringe each element of claim 36. Tr. at 426–441. Specifically in response to the defendants' "interconnected straps" argument, he testified that Bouncenettes 1 and

2 and the Magic Motion have "a pair of support straps that are interconnected to support [the seat] at the angle" as required by the claim. Tr. 433, 440. The defendants presented no expert opinion evidence to the contrary.

In its summary judgment memorandum and order, the court concluded that the "claim construction [of claim 36] is broad enough to include an interconnection that occurs anywhere on the setback. Thus, the jury must resolve whether the Safety 1st products are interconnected to support within the meaning of claim 36 of the '552 patent." *Fisher–Price*, 2002 WL 1307333, at *19, 2002 U.S. Dist LEXIS 10569, at *59–60. After considering the evidence presented at trial, the jury resolved this issue in favor of Fisher–Price, finding that the Bouncenette 1 and 2 and the Magic Motion indeed satisfy such claim language. There was substantial evidence from which the jury reasonably could conclude as much. Therefore, the verdict will not be disturbed.

### 2. Bouncenette 3

■ The Bouncenette 3 is similar to the previous two iterations of the Bouncenette in that it is a bassinet with a canopy and an adjustable seatback. This version of the product, however, employs a zipper instead of a pair of straps to support the seat and adjust the angle of inclination of the seatback. Fisher–Price argues that, notwithstanding this difference, the Bouncenette 3 literally infringes claim 36 of the '552 patent.[4] As support, the plaintiff cites the testimony of its expert, Professor Visser, who testified that the Bouncenette 3 is "identical" to the former Bouncenette products for purposes of infringement of the '552 patent and that he "did not find

---

4. Again, following summary judgment, Fisher–Price was not entitled to present a theory of infringement by equivalence as to the '552 patent.

any changes [in the Bouncenette 3 product] that would affect" such opinion. Tr. 403–04.

The jury's finding that the Bouncenette 3 product literally infringes the '552 patent must be overturned. There is no evidence in the record that the Bouncenette 3 includes "a pair of ... straps" as required by claim 36. Although Visser testified that the Bouncenette 3 is "identical [to the Bouncenette 1 and 2] concerning the '552 patent," he did not testify that the Bouncenette 3 product contains "a pair of receptable [sic] support straps [that] are attached to the receptacle and are interconnected to support the first end at the angle." Indeed, he could not credibly have done so, as the Bouncenette 3 contains a zipper but no such straps. The professor's testimony certainly tends to support a finding of infringement by equivalents,[5] but as the plaintiff was precluded from arguing such a theory to the jury, any such finding is patently invalid or, at least, irrelevant.

■■■ Although the law may presume the existence of findings necessary to support the jury's findings, it cannot condone a jury verdict that is contrary to legal principle. *Perkin–Elmer Corp.*, 732 F.2d at 893 ("[T]he [district] court determines whether the evidence so viewed constitutes 'substantial evidence' in support of the jury's findings and, if so, whether those findings can support the legal conclusions necessarily drawn by the jury in accord with its instructions en route to its verdict."); *see also Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed.Cir.1992) (citing "second prong" of JMOL standard which requires court "to review the issues of law necessary to the verdict"). In this case, a finding of literal infringement is contrary to the legal principle that the accused product must contain all of the claim limitations and that "any deviations from the claim limitations precludes a finding of literal infringement." *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed.Cir.1994). Accordingly, the jury's finding that the Bouncenette 3 literally infringes claim 36 must be overturned.

Notably, the court is unpersuaded by Fisher–Price's complaints that the defendants "ducked the issue [regarding literal infringement by the Bouncenette 3] at trial" and *"offered no evidence* on this topic." Pl.'s Answer Brief (D.I.332) at 16. Of course, it was not the defendants' burden to prove non-infringement, and, as such, they were not required to offer any evidence on the subject. Rather, Fisher–Price bore the burden of proving literal infringement by a preponderance of the evidence. Failing to do so, and failing to rebut the movants' showing that there is no substantial evidence to sustain the verdict in this regard, it is axiomatic that the verdict must be overturned. Similarly unavailing is the plaintiff's argument that "the only testimony on the record from one-skilled-in-the-art concerning the [Bouncenette 3] is that that product, too,

---

5. Visser's remark that the "the only change structurally—the two [Bouncenette products] are identical concerning the '552 patent" reveals that he may have considered the standard for determining equivalent infringement or, perhaps, literal infringement relating to means-plus-function claims. *See Cybor Corp. v. FAS Tech.*, 138 F.3d 1448, 1457 (Fed.Cir. 1998) ("Under § 112, P 6, an accused device with structure not identical to the structure described in the patent will literally infringe the patent if the device performs the identical function required by the claim with a structure equivalent to that described in the patent."). Of course, neither theory is a valid basis for the jury's finding as to the Bouncenette 3; equivalent infringement was removed from the case following summary judgment, and means-plus-function analysis pursuant to 35 U.S.C. § 112, paragraph 6, does not apply to claim 36 as it is not written in the required means-plus-function form.

infringes claim 36." Pl.'s Answer Brief (D.I.332) at 17. The court does not quarrel with this observation. That the professor's testimony is the "only" evidence of infringement does not render such evidence legally sufficient to sustain a jury verdict of literal infringement.

**b. Safety 1st's "Movably Connected" Argument**

■ Claim 36 requires a suspension assembly and a collapsible support frame that are "movably connect[ed]" to each other. Safety 1st moves for JMOL on the ground that none of the accused products contains such a "movabl[e]" connection. In its summary judgment order, the court found this to be a question of fact:

> Although the court is persuaded that a "fixedly connected" product would be excluded under its claim construction, there is a question of fact as to whether the Safety 1st products' support frames are movably or fixedly connected to the suspension assembly. The jury will need to resolve this factual question at trial.

*Fisher–Price*, 2002 WL 1307333, at *20, 2002 U.S. Dist LEXIS 10569, at *60.

The jury resolved this question of fact in the plaintiff's favor, and such a finding is supported by substantial evidence. At trial, Fisher–Price's expert explained that the support frame and the suspension assembly may share many components, but that the product meets all of the limitations of claim 36. Specifically regarding the defendant's "interconnected" argument, Professor Visser testified that the frame and assembly are separate pieces and are movably connected to one another. He again used demonstratives and models of the accused products to support his testimony. Finally, Visser testified that, for purposes of infringement of claim 36, all three versions of Safety 1st's Bouncenette product are identical. Tr. at 403.

The defendants adduced no expert opinion to the contrary, but merely argued through counsel that the accused products did not meet the "movably connected" limitation. The jury rejected this argument, as it was entitled to do. The jury's verdict in this regard will not be disturbed.

**2. Validity of the '755 Patent: The Written Description Requirement**

■ Safety 1st moves for judgment as a matter of law that the '755 patent is invalid due to an insufficient written description, in violation of 35 U.S.C. § 112. The first paragraph of § 112 requires that:

> the specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same. . . .

35 U.S.C. § 112, para. 1 (2003). Whether the written description requirement has been satisfied is a question of fact. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed.Cir.1998). The analysis depends on the nature of the invention and the amount of knowledge imparted to those skilled in the art by the disclosure. *Total Containment, Inc. v. Environ Products, Inc.*, 217 F.3d 852 (Fed.Cir.1999). The applicant is not required to describe exactly the subject matter claimed, but the description must clearly allow persons of ordinary skill in the art to recognize that the inventor had possession of the claimed invention. *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed.Cir.1991). Finally, amended claims that introduce elements or limitations which are not supported by the as-filed disclosure violate the written description requirement. *In re Lukach*, 58 C.C.P.A. 1233, 442 F.2d 967, 968 (1971).

Safety 1st contends that Fisher–Price broadened the claims of the '755 patent so that the accused products would be captured by the scope of the claims. Specifically, the defendants point to an amended claim which removed the requirement that one of the harness members be secured to the "rear face" or a "child carrier" of the device. At trial, however, there was no evidence, other than the '755 patent application itself, of this position. The defendants called no expert or any other witness to testify as to whether the written description would "enable any person skilled in the art . . . to make and use" the invention. Indeed, the record reflects an absolute dearth of evidence on this topic until the defendants' closing summation. Accordingly, the jury concluded that Safety 1st had failed to show by clear and convincing evidence that the '755 patent is invalid for failure to meet the written description requirement.[6]

In such a context, the defendants face a stringent standard upon a renewed motion for JMOL:

> The defendants bear the burden of showing facts supported by clear and convincing evidence to prove the patent invalid. Courts grant JMOL for the party bearing the burden of proof only in extreme cases, when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor.

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed.Cir. 2001) (citation omitted). Having raised little to no evidence at trial that the '755 patent is invalid due to an insufficient description, Safety 1st has utterly failed to show that the jury failed to reach the only reasonable conclusion. As such, its motion for JMOL in this regard is denied.

### 3. The '940 Design Patent

Safety 1st moves for judgment as a matter of law on several issues related to the '940 design patent. The defendants first argue that they are entitled to JMOL because Fisher–Price failed to meet its burden of proof that the Bouncenette incorporated "points of novelty" of the patented design. Second, Safety 1st contends that the '940 is invalid because it was anticipated and obvious over prior art. Third, the movants claim there can be no infringement when an infringing product is displayed on the sales box, with a non-infringing product inside. Finally, Safety 1st asserts that the '940 patent is barred because the invention was in commercial use for more than one year before the filing date of the patent application. The court will address each of these arguments in turn.

### 1. Anticipation

The defendants argue that the '940 patent is invalid as anticipated by prior art. Design patent anticipation requires a showing that a single prior art reference is "identical in all material respects" to the claimed invention. *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461, (Fed.Cir.1997). Because "that which infringes, if later, would anticipate, if earlier," *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537, 9 S.Ct. 389, 32 L.Ed. 738 (1889), the design patent anticipation test is identical to the design patent infringement test. *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed.Cir.2001).

Determining infringement or anticipation of a design patent is a two step process. First, the court must construe the claim language. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed.

---

**6.** The jury answered a special interrogatory to this effect. *See* Jury Verdict No. 17.

Cir.1995). In construing the claimed design, only "the non-functional aspects of an ornamental design as shown in a patent" should be considered. *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed.Cir.1993). Second, the finder of fact must compare the claim and the accused or allegedly anticipating design, employing both the "ordinary observer" test and the "point of novelty" test. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed.Cir.2002). According to the ordinary observer test, the patented design and the accused or allegedly anticipating design are compared for overall visual similarity:

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Catalina Lighting, Inc. v. Lamps Plus Inc.*, 295 F.3d 1277, 1286 (Fed.Cir.2002) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528, 20 L.Ed. 731 (1871)). According to the second test, the jury must determine whether the accused or allegedly anticipating design incorporates the points of novelty that distinguished the patented invention over prior art. *Id.* at 1286–87; *Contessa*, 282 F.3d at 1377.

Safety 1st maintains that the patented design is anticipated by certain prototypes designed by Scott Ziegler. At trial, Fisher–Price adduced expert testimony suggesting that the points of novelty of the '940 patent consisted of the dome and its ornamental features. Tr. at 545. The plaintiff also adduced the testimony of two witnesses, both named inventors of the '940 patent, who testified regarding the differences between the patented design and the Ziegler models. Julia Favorito testified that the dome was changed from the Ziegler models to the patented design, and that the overall shape of the product was made more oval. Tr. 308–09; 311. She stated that the change to an oval shape rendered the final patented design "aesthetically different" than the Ziegler models. Tr. 321. Scott Ziegler also testified by deposition, stating that the changes Fisher–Price had made to his models were "substantial" and made a difference to the aesthetic appearance of his model. Tr. 333–34. He also stated that the design patent is "so different than the way [his model] is done" and noted that the patented design featured "more of a dome" and "a fuller" appearance. Tr. 329; 332; 334.

To the contrary, Safety 1st, who bore the burden of proving invalidity, offered no expert testimony regarding the ordinary observer test or the point of novelty test, but merely argued, through its attorneys, against the position taken by the plaintiff and its witnesses. It can hardly be said, then, that the jury was not at liberty to disbelieve the defendants' evidence or that it failed to reach the only reasonable conclusion regarding anticipation of the '940 patent. The defendants' motion to this effect is denied.

### 2. Obviousness

 Safety 1st next moves for JMOL that the '940 patent is invalid for obviousness pursuant to 35 U.S.C. § 103. Section 103 prohibits the granting of a patent "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2003). The ultimate obviousness determination is a legal conclusion based on underlying findings of fact. *In re Kot-*

*zab,* 217 F.3d 1365, 1369 (Fed.Cir.2000). To determine the question of obviousness, the court should consider: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the art; and (4) objective evidence of non-obviousness. *Riverwood Int'l Corp. v. The Mead Corp.,* 212 F.3d 1365, 1366 (Fed.Cir. 2000) (citing *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)). In the context of a design patent, obviousness is assessed according to "the designer of ordinary capabilities who designs articles of the type presented in that application." *In re Nalbandian,* 661 F.2d 1214, 1216 (C.C.P.A.1981).

Safety 1st argues that any differences between the Ziegler models and the patented design are obvious pursuant to § 103. At trial, however, the defendants adduced no evidence whatsoever regarding the scope and content of the prior art or the level of ordinary skill in the art. There was no testimony or other evidence regarding how a designer of ordinary capabilities in the particular field at issue would view the differences between the Ziegler models and the patent claims, other than the testimony of the inventors, described above, which support's the plaintiff's position that the design patent was not anticipated or obvious. Lacking an evidentiary basis for a finding of obviousness, the jury reached the only reasonable verdict it could, finding that the defendants had not clearly and convincingly shown that the '940 patent is invalid for obviousness. Safety 1st's motion for judgment as a matter of law on this topic is denied.

### 3. The Public Use Bar

 Safety 1st next argues that evidence in the record demonstrates that the design of the '940 patent was subject to public use contrary to 35 U.S.C. § 102(b). Section 102(b) prohibits granting a patent for an invention that was "in public use" in the United States more than one year before the patent application date. 35 U.S.C. § 102(b). "Public use" of a claimed invention occurs when the inventor allows another person to use the invention without limitation, restriction, or obligation of secrecy to the inventor. *In re Smith,* 714 F.2d 1127, 1134 (Fed.Cir.1983). To determine whether an invalid public use has occurred, the court applies a two step test: first, whether a public use occurred, and second, whether the public use was experimental. *TP Laboratories, Inc. v. Professional Positioners, Inc.,* 724 F.2d 965, 968–69 (Fed.Cir.1984). It remains the challenger's burden, however, to establish a public use. *Id.* at 971 ("[I]t is incorrect to impose on the patent owner ... the burden of proving that a 'public use' was 'experimental.'") Mere knowledge of the invention by the public does not warrant rejection under § 102(b). *Id.* at 969. Nonetheless,

> it is well established that to constitute public use or sale of an invention, it is not necessary that more than one of the invented articles be used or sold, or that the article be used or sold for a profit, or that the article be used with the knowledge or consent of the inventor, or that the invention be necessarily exposed to public view (*viz.*—the invention may be a small element, concealed by its nature, in a larger article; its presence may not be known to the user or purchaser of said article).

*In re Blaisdell,* 44 C.C.P.A. 846, 242 F.2d 779, 783 (1957) (citations omitted).

Safety 1st argues that it is entitled to JMOL because Fisher–Price allegedly displayed a model embodying the patented design to a customer at Wal–Mart for commercial purposes more than one year be-

fore the patent's filing date. The jury determined that a meeting occurred between Fisher–Price and Wal–Mart representatives on May 12, 1998 regarding a possible purchase by Wal–Mart of the patented design. There was a question of fact, however, regarding whether a prototype of the invention was displayed at the meeting.[7] The only witness deposed on the matter, Fisher–Price Marketing Manager Mark Weppner, stated that he was not at the meeting, and did not know what model, if any, had been shown. Tr. 1332. Safety 1st can point to no other evidence that would lead the jury to believe that a model was shown at the meeting. Accordingly, the jury determined that the defendants had failed to prove by clear and convincing evidence that a prototype embodying the claimed design was displayed at the meeting. As such, Safety 1st can hardly argue now that it is entitled to JMOL that there was a public use more than one year prior to the application filing date. Its motion to this effect is denied.

#### 4. Infringement of the '940 Design Patent

■ Safety 1st claims that Fisher–Price failed to meet its burden of proof regarding infringement of the design patent. The evidence at trial, however, belies such a position. Determining infringement of a design patent entails construing the design claim and then applying the "ordinary observer" and "point of novelty" tests as discussed above. As noted above, Fisher–Price adduced expert testimony suggesting that the points of novelty of

the '940 patent consisted of the dome and its ornamental features. Tr. at 545. The expert, Professor Visser, then explained at length how the Bouncenette infringes the '940 patent through its appropriation of these points novelty. Tr. at 545, 547–48. Finally, Visser testified that there was infringement based on the ordinary observer test, because one would be confused when comparing the '940 design claim to the Bouncenette. Tr. 546–50. Such evidence, together with the claim language, the court's construction of the patent terms, and the physical models in evidence, created a substantial basis for the jury's verdict that the Bouncenette products infringe the '940 design patent. The court finds no legal error in it. The defendants' motion for JMOL to reverse the jury's finding of infringement is denied.

#### 5. Whether the Sale of a Non–Infringing Product Inside a Box Displaying an Infringing Product Constitutes Infringement

As a preliminary matter, Safety 1st argues that Fisher–Price waived its right to assert a claim involving the Bouncenette 2 because it was not raised in the pre-trial order. In the section of the Joint Proposed Pre–Trial Order entitled "statement of admitted facts requiring no proof," however, the parties agree that model numbers 43002 and 43006 are the same for purposes of infringement of the '940 patent. Both of these model numbers correspond to the Bouncenette 1. The Bouncenette 2 model numbers are identical, except

---

7. The defendants, citing *In re Mann*, 861 F.2d 1581 (Fed.Cir.1988), argue that a "display" of a model embodying the patented design at the meeting between Fisher–Price and Wal–Mart would constitute a public use. In *In re Mann*, a patent application was rejected on § 102(b) grounds because a table embodying the claimed design was on display at a trade show more than a year before the patent filing date. The present case is perhaps distinguishable from *In re Mann*. Nonetheless, for purposes of the present motion, the court assumes that if a model embodying Fisher–Price's design had been displayed at the meeting with Wal–Mart, it would have constituted a public use for § 102(b) purposes.

the letter "A" follows each number, *i.e.,* 43002A and 43006A. The court acknowledges that there exists some ambiguity regarding whether the Pre–Trial Order was intended to include the Bouncenette 1 and 2 models. During the entire length of the trial, however, Safety never raised a single objection on this point. As such, the court will construe the Joint Proposed Pre–Trial Order to incorporate model numbers regarding both the Bouncenette 1 2. In any case, as discussed below, the infringement at issue constitutes a use of the Bouncenette 1, regarding which any claim of infringement is certainly not waived. Therefore, Safety 1st's objection on this point is moot.

■ Safety 1st sold the Bouncenette 2, which is not accused of infringing the '940 design patent, in a box depicting the Bouncenette 1, which has been found to infringe the '940 patent. The jury found that such a sale constitutes infringement that warrants recovery. The defendants contest this conclusion, citing *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1566–68 (Fed.Cir.1984). In that case, non-infringing sunglasses were displayed for sale on a patented display rack. The plaintiff in that case argued that using the display rack constituted "appl[ying] the patented design" to the glasses for the purpose of sale pursuant to 35 U.S.C. § 289.[8] Thus, the issue was whether the plaintiff could recover the defendant's profits from the sale of the displayed sunglasses. The court answered in the negative, holding that § 289 forbids the application of a patent to an article that is sold, but does not apply to the sale of an article sold merely with the aid of a patented product. *Trans–World,* 750 F.2d at 1567. Citing the legislative history of the statute,

the court concluded that § 289 "was intended to permit recovery of an infringer's profits only in cases where the infringement involved sale of a product embodying the patented design." *Id.*

*Trans–World* may be distinguishable from the present case. In the former case, the sunglasses were visible and, accordingly, consumers did not mistakenly believe they were purchasing the display stand. By contrast, in the case at hand, the consumer sees *only* what is displayed on the box; the consumer has no knowledge that a different, non-infringing product is inside. Thus, in the present case, the box displaying the infringing product did not merely "aid" in the sale of the article, but it represented to consumers the product purportedly offered for sale. In this way, it becomes clear that the application of *Trans–World* is not dispositive: regardless of whether the defendants violated § 289, the use of the box displaying the infringing product constituted *an offer to sell* the infringing product of the sort prohibited by 35 U.S.C. § 271. 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell or sells any patented invention ... infringes the patent."). As the Federal Circuit wrote in an analogous context:

> As a matter of federal statutory construction, the price quotation letters can be regarded as "offers to sell" under § 271 based on the substance conveyed in the letters, *i.e.,* a description of the allegedly infringing merchandise and the price at which it can be purchased. Moreover, such a construction harmonizes with the broad definition of "offer to sell" provided in § 271(i).

---

8. Section 289 provides that "whoever ... applies [a] patented design ... to any article of manufacture for the purpose of sale ..., shall be liable to the owner to the extent of his total profit...."

*3D Sys. v. Aarotech Lab.*, 160 F.3d 1373, 1379 (Fed.Cir.1998); *see also Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252–53 (Fed.Cir.2000) (defining "offer to sell" in context of patent infringement liability "according to the norms of traditional contractual analysis"); *Black & Decker, Inc. v. Shanghai Xing Te Hao Indus.*, 2003 WL 21383325, at *3, 2003 U.S. Dist. LEXIS 10127, at *10–11 (N.D.Ill.) (noting that "an 'offer to sell' requires description of the product and a price at which it could be purchased"); *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1309 n. 6 (Fed.Cir. 1999) (holding that advertisements may constitute offers to sell for purposes of § 271(a)); *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1139 (9th Cir.2003) ("With the addition of 'offers to sell' to the patent statute, it is no longer clear that advertising can never give rise to a direct patent infringement action."). Certainly, the box displaying pictures and a description of the infringing product, along with the price at which it could be purchased, may be construed as an "offer to sell" that infringing product. To constitute infringement pursuant to § 271(a), nothing more is required. As such, the court will not disturb the jury's finding that infringement occurred when the defendants sold the Bouncenette 2 in boxes displaying the Bouncenette 1, or, put differently, when they "offer[ed] to sell" the Bouncenette 1 to the public.

**B. Defendants' Renewed Motion for Judgment as a Matter of Law For a Limitation on Damages**

Safety 1st moves for judgment as a matter of law for a limitation of the damages awarded by the jury.[9] Specifically, Safety 1st claims that (1) Fisher–Price is not entitled to damages for infringement of

the '940 patent prior to January 26, 2001 because Fisher–Price did not properly mark the product; (2) Fisher–Price is not entitled to lost profits for any infringement occurring while its parent company, Mattel, owned the patents; and (3) the jury's award amounts to double damages because it awarded lost profits for infringement of the utility patent and infringers' profits for infringement of the design patent relating to the same product.

**1. Date of Damages Accrual Based on the Marking of the '940 Patent**

Safety 1st alleges that it is entitled to judgment as a matter of law for a limitation of damages because Fisher–Price failed to prove that it complied with the marking requirement of 35 U.S.C. § 287(a). Section 287(a) provides that a patentee who sells, or offers for sale, his patented product within the United States may give notice to the public by marking the product or packaging with the word "patent" and the patent number. 35 U.S.C. § 287(a) (2003). To recover damages for acts prior to the filing of the suit, the patentee must show constructive notice through marking or actual notice on the part of the infringer in order to avail itself of damages. Constructive notice is established when the patentee has "consistently marked substantially all" of the patented products, and has ceased distributing unmarked products. *American Medical Systems, Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed.Cir.1993). Compliance with the marking statute is a question of fact, *ADC Telcoms. v. Siecor Corp.*, 954 F.Supp. 820, 832 (D.Del.1997), which the plaintiff must prove by a preponderance of the evidence. *Nike, Inc. v. Wal–Mart*

---

9. Safety 1st also moves for such relief in its "Emergency Motion to Correct Judgment" (D.I.297). Because the argument raised in

that motion is addressed here, the court treats the Motion to Correct Judgment as redundant and moot.

*Stores, Inc.,* 138 F.3d 1437, 1446 (Fed.Cir. 1998).

At trial, the plaintiff adduced the testimony of John Rhein, Director of Engineering at Fisher–Price, who testified about the company's patent marking procedures. Tr. 241–45. Rhein stated that a "marking memorandum" was transmitted on October 27, 2000 that directed Fisher–Price's Engineering Department to begin marking the inventory to which the '940 patent applied. Tr. 241–44; 261. The witness also testified that the actual patent marking occurred at least by November 16, 2000. Tr. 262–63. The plaintiff introduced a product tag dated November 16, 2000 which included the patent marking information and was affixed to the relevant inventory on or after that date.[10] *Id.* at 262. From this evidence, the jury concluded that Fisher–Price began marking substantially all of its relevant products with the '940 patent number on November 16, 2000. *See* Jury Verdict No. 18.

■ Safety 1st argues that the marked products could not have reached warehouses in the United States until December 20, 2000. Such is not the proper inquiry, however. It is sufficient that the plaintiff began shipping the marked product on or after November 16, 2000. *See* Tr. 263 (reflecting Rhein's testimony that there were probably "weekly shipments or daily shipments" of the '940 design patent product after marking); *see also American Medical Systems,* 6 F.3d at 1537 (holding that patentee "is entitled to damages from the time that it began shipping its marked products").

■ The defendants also argue that substantially all of the plaintiff's unmarked inventory would not have been depleted before January 26, 2001 or, in other words, that Fisher–Price did not cease distributing unmarked products before filing the present suit. Safety 1st, however, can point to no persuasive evidence for its position, but merely speculates about the "lag" inherent in shipping products from East Asia and depleting unmarked inventory. Defs.' Opening Brief (D.I.313) at 27. This is insufficient to sustain a motion for judgment as a matter of law. In any case, the law presumes the existence of findings necessary to support the jury's verdict. *Perkin–Elmer Corp.,* 732 F.2d at 893. In this case, the jury impliedly concluded that shipping and distribution of unmarked products ceased on or after November 16, 2000.

There was substantial evidence from which the jury could conclude that Fisher–Price began marking substantially all of its products on November 16, 2000, that distribution of unmarked products ceased on or after that date, and that marking of the inventory prior to January 26, 2001 was consistent and continuous. The jury's verdict will not be disturbed.[11]

### 2. Competitive Relationship Between Safety 1st and Fisher–Price's Parent Company, Mattel

Safety 1st moves for JMOL for reduced damages. It argues that Fisher–Price is not entitled to damages for products that were sold before the patent was assigned to it from its parent company, Mattel, Inc. ("Mattel"). The defendants allege that Fisher–Price is not entitled to damages for

---

**10.** Rhein testified that a revision of the tag may have occurred even earlier than November 16, 2000. Presented with the tag dated November 16, 2000, however, he "would assume" that the tags were affixed to the products on or after that date. Tr. 262–63.

**11.** Thus, in the new trial regarding damages only, *see infra* section C, the plaintiff will be permitted to introduce evidence of pre-trial damages.

that period because Mattel is not a direct competitor of Safety 1st. The testimony of Safety 1st's own witness, however, belies this assertion. Lois DiMartinis, Vice President of Product Marketing for Dorel Juvenile Group, which manufactures products for Safety 1st, testified that she considered the defendants to be in competition with Fisher–Price and Mattel in the category of the infringing products. Tr. 847–48. Further, the plaintiff's witnesses testified regarding the parent-subsidiary relationship between Mattel and Fisher–Price. Mark Weppner testified that "anything that Fisher–Price sells, technically, Mattel sells" and that Mattel does not sell through any entities other than Fisher–Price any products that compete with the relevant Fisher–Price products. Tr.266. John Rhein testified to the same effect, explaining that "Fisher–Price is actually a wholly-owned subsidiary of Mattel" and that "any product that Mattel makes . . . is really under the control of Fisher–Price." Tr. 151. Both Fisher–Price and Mattel, then, were competitors of Safety 1st. Accordingly, the defendants' factual objection is unfounded, and the court need not address the legal implications which may or may not follow from it. The defendants' motion for JMOL on this issue is denied.

### 3. Calculation of Total Damages and Recovery for Design and Utility Patents That Apply to the Same Product

 Safety 1st asserts that it is entitled to judgment as a matter of law for reduced damages because Fisher–Price allegedly received damages for infringement of design and utility patents related to the same product. Each sale of a product is an infringement because "whoever without authority makes, uses, offers to sell or sells any patented invention" is an infringer. 35 U.S.C. § 271(a) (1994). The same holds true for a design patent. 35 U.S.C.

§ 289 (1994). Nonetheless, a patentee shall not twice recover profit made from the infringement. *Id.* Accordingly, when both a design and utility patent are infringed for the same product, the patentee may recover only once for each sale of that product. *Catalina Lighting, Inc. v. Lamps Plus Inc.*, 295 F.3d 1277, 1291 (Fed.Cir.2002).

The court has carefully reviewed the jury's damages award as well as the parties' arguments on the topic, and it is satisfied that the award does not offend the prohibition against double recoveries. Nonetheless, because the court will grant the plaintiff's motion for a new trial on the issue of damages for the reasons stated below, it need not belabor the issue.

### C. Plaintiff's Renewed Motion for Enhanced Damages, Attorneys' Fees, Pre–Judgment Interest, Post–Judgment Interest and an Accounting or, in the Alternative, a New Trial on Damages

 The plaintiff moves for a new trial on the issue of damages only. As outlined in more detail above, the court should grant a new trial in a jury case if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir.1991).

In the present case, a new trial on the issue of damages is clearly necessitated, as the jury's award of damages included lost profits damages for sales of Safety 1st's infringing products, including the Magic Motion and all models of the Bouncenette. The court has overturned, however, the jury's finding that the Bouncenette 3, which was redesigned to include a zipper instead of straps, literally infringes the '552 patent. As a result, the plaintiff

cannot recover damages for lost profits regarding sales of the Bouncenette 3. Because it is unclear exactly how the damages award relates to sales of each infringing product, a new trial on the issue is warranted. A new trial also will address the plaintiff's well-founded objection regarding the defendants' extremely delayed production of relevant sales data.

In its briefing, Fisher–Price also complains that the defendants have failed to disclose information regarding sales of yet another model of the 2–in–1 Bouncenette product, the "Eddie Bauer" edition, with model number 30602. The plaintiff summarily concludes that the Eddie Bauer Bouncenette is "structurally identical" to the other Bouncenette models, Pl's Opening Brief (D.I.322) at 46, and presumes that it may therefore seek discovery of, and present damages evidence regarding, the Eddie Bauer Bouncenette. There has been no finding of infringement, however, as to that product. Accordingly, during the new trial regarding damages, the plaintiff will not be permitted to introduce any evidence of alleged damages relating to the "Eddie Bauer" edition of the Bouncenette product. Indeed, Fisher–Price will not be permitted to introduce evidence of damages as to any product other than those which the jury properly found to be infringing the plaintiff's patents; namely, the Magic Motion Bassinet, and the 2–in–1 Bouncenette with model numbers 43002 [12] and 43006 (the Bouncenette 1) and 43002A and 43006A (the Bouncenette 2).

The remaining issues raised by Fisher–Price's motion, namely, whether enhanced damages or an award of attorneys' fees is warranted, and a determination regarding pre-judgment and post-judgment interest, are denied pending a new trial on damages. These issues may be reasserted, if applicable, following such trial.

### D. Defendants' Renewed Motion for Judgment of Invalidity of the '755 and '940 Patents Because of the On–Sale Bar

▮▮▮▮▮ The defendants maintain that the '755 and '940 patents are invalid because the corresponding inventions were "on sale" in violation of § 102(b) of the patent statute.[13] The statutory on-sale bar applies when two conditions are satisfied before the critical date of one year prior to the filing date of the application: (1) a product embodying the claimed invention is the subject of a commercial offer for sale; and (2) the claimed invention is ready for patenting. *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). Additionally, the statute requires that the "sale" take place in the United States. 35 U.S.C. § 102(b). Whether an invention was on sale in the United States more than one year before the patent's application date is a question of law based on underlying factual determinations. *Abbott Lab. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1317 (Fed. Cir.1999).

▮▮▮▮▮ In the present case, there is no dispute that the claimed inventions were ready for patenting at the relevant period of time. The only question, then, is wheth-

---

12. Apparently, the Bouncenette 3 product, which includes a zipper instead of straps, was sold under several different model numbers, including model number 43002. *See supra* note 1. In the context of the present discussion, the court refers only to the Bouncenette 1 and 2 in connection to this model number.

13. The statute provides that "[a] person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2003).

er the inventions were offered for sale prior to the application dates. "[O]nly an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." *Group One, Ltd. v. Hallmark Cards, Inc.,* 254 F.3d 1041, 1048 (Fed.Cir. 2001). Determining whether a commercial offer for sale occurred is determined by reference to the "substantial body of general contract law," in particular the Uniform Commercial Code and the Restatement of Contracts. *Id.; MLMC, Ltd. v. Airtouch Communs., Inc.,* 215 F.Supp.2d 464, 477 (D.Del.2002).

The Restatement defines an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981); *see also* RICHARD A. LORD, WILLISTON ON CONTRACTS § 4:7, at 296–7 (4th ed.1990) (citing "general test" for determining whether offer exists as "whether the facts show that some performance was promised in positive terms in return for something requested by the person making the promise" and "whether the person to whom the manifestation is made might reasonably have supposed that by acting in accordance with it a contract could be concluded"). There is no offer, however, "if the person to whom it is addressed knows or has reason to know" that the offeree "does not intend to conclude a bargain until he has made a further manifestation of assent." RESTATEMENT (SECOND) OF CONTRACTS § 26; *see also Linear Tech. Corp. v. Micrel, Inc.,* 275 F.3d 1040, 1050 (Fed.Cir. 2001) (holding that certain communications could not be considered offers because they did not indicate the offeree's "intent to be bound").

An issued patent is presumed valid. 35 U.S.C. § 282. "To overcome this presumption, the party challenging validity bears the burden of proving by clear and convincing evidence that the invention fails to meet the requirements of patentability." *MLMC,* 215 F.Supp.2d at 476. Because the jury rejected the defendants' invalidity attack, the movants now bear the burden of showing that they established invalidity due to the on-sale bar "by evidence that the jury would not be at liberty to disbelieve." *Mentor H/S,* 244 F.3d at 1375.

In their briefing, the parties extensively review the evidence adduced at trial. It is unnecessary for the court to do the same in this opinion. Safety 1st concedes in its opening brief that the communications at issue between Fisher–Price and certain vendors could not constitute an offer for sale for purposes of § 102(b):

> The testimony of four Fisher–Price witnesses was that the In–Line document would not have been sent to and "approved by" Fisher–Price unless the selected vendor named in the form had already agreed that *if Fisher–Price elected to order the product* as specified that vendor would manufacture and ship the product according to the commercial terms (of price, quantity, and date) contained in the In–Line document.

Defs.' Opening Brief (D.I.310) at 3 (emphasis removed and supplied). By the movants' own admission, then, it was understood by all parties involved that further assent was required by Fisher–Price in order for the "in-line" quotation to become an offer to sell. As noted above, there can be no offer if the offeree "does not intend to conclude a bargain until he has made a further manifestation of assent." RESTATEMENT (SECOND) OF CONTRACTS § 26. There was bountiful other evidence at trial, which the court will not rehash, to support the conclusion that such a situation existed in

this case. As such, the jury's finding that the defendants did not clearly and convincingly prove the invalidity of the '755 and '940 patents is well-founded, and the movants have failed to show that JMOL to reverse the verdict is warranted.

### E. Plaintiff's Renewed Motion for Judgment as a Matter of Law of Infringement of Claims 26, 27, and 32–34 of the '552 Patent

 The plaintiff moves for renewed JMOL that the defendants' Bouncenette products infringe claims 26, 27, and 32–34 of the '552 patent.[14] Of these, claim 26 is an independent claim, with claims 26, 27, and 32–34 depending from it; thus, as the plaintiff states, "[the remaining] claims stand or fall with claim 26." Pl.'s Opening Brief (D.I.324) at 6.

Claim 26 of the '522 patent is directed to "[a] foldable infant product for supporting an infant." '552 patent, cl. 26, col. 13:14. It entails "[a] first support" and "[a] second support" which the court found must be "separate and independent" from each other. *Fisher–Price, Inc. v. Safety 1st, Inc.,* 2002 WL 500572, 2002 U.S. Dist. LEXIS 5734 (D.Del.2002) (construing terms of the '552 patent). In its summary judgment order issued in June of 2002, the court noted several questions of fact concerning the application of claim 26 to the accused Bouncenette products, including whether the Bouncenettes include such separate and independent supports. The court wrote:

> Safety 1st claims that the Bouncenette does not infringe claim 26 of the '552 patent because it does not have two independent supports—or legs—as required by the '552 patent, but rather one, bent rectangular leg. Indeed, the

court's claim construction order did state that the support legs of the '552 patent must be separate and independent from one another. In light of the claim construction language and the fact that the Bouncenette leg does appear to be crafted from one piece, the court would normally be inclined to grant summary judgment in favor of Safety 1st. However, the Bouncenette instruction manual refers to a "left" and "right" leg being joined by a "connector piece." The reference in the instruction manual creates a question of fact as to whether the Bouncenette's support leg is truly one piece or whether it is two separate pieces.

*Fisher–Price,* 2002 WL 1307333, at *19, 2002 U.S. Dist LEXIS 10569, at *56–57 (citations omitted).

At trial, the jury was presented with the Bouncenette models, the claims of the '552 patent, and the court's constructions of the various claim terms. It was thoroughly instructed by the court regarding infringement. *See* Jury Instructions 3.0, 3.1, 3.2, 3.3, 3.5.3.1, and 3.6. After considering the evidence, the jury concluded that Fisher–Price had not shown by a preponderance of the evidence that claim 26 was infringed by the Bouncenette. Jury Verdict No. 1. As the plaintiff notes innumerable times in its briefing in opposition to the defendants' renewed motions for JMOL, the law presumes the factual findings necessary to support such a verdict. In this case, the court may presume that the jury determined the factual issue detailed above in favor of Safety 1st, finding that the support leg of the Bouncenette did not include separate and independent supports as re-

14. Because the standard for a finding of literal infringement is discussed earlier in this opinion, it is not repeated here.

quired by claim 26.[15] The jury was entitled to do just that, and the court finds no legal error in the conclusion. The plaintiff, who bore the burden of proving infringement by a preponderance of the evidence, has failed to show on its renewed motion for JMOL that the jury failed to arrive at the only reasonable verdict on this issue. *Mentor H/S*, 244 F.3d at 1375. As such, its motion is denied.

### F. Defendants' Motion for a New Trial

Finally, Safety 1st moves for a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59. The defendants seek a new trial regarding: (1) whether the '755 and '940 patents are invalid due to the on-sale bar; (2) infringement of claim 36 of the '552 patent; (3) infringement of the '940 patent; (4) invalidity of the '940 patent because of anticipation and obviousness; (5) damages for sales of the Bouncenette 2 sold in boxes depicting the Bouncenette 1; (6) invalidity of the '940 patent due to a public use; (7) damages; (8) invalidity of the '755 patent due to an insufficient written description; and (9) wilfulness.

Each of these issues, except the question of wilfulness, has been addressed in the context of the other post-trial motions. For the same reasons, previously discussed, that JMOL is not appropriate on any of these grounds, a new trial is not warranted, except as to damages. In each of the areas regarding which the defendants seek a new trial, the verdict was supported by substantial evidence and, accordingly, was not "against the weight of the evidence" or indicative of "a miscar-

riage of justice." *Williamson*, 926 F.2d at 1352.

■■■■■■ This conclusion applies to the finding of wilful infringement as well. In determining wilfulness, "the primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing." Furthermore, the law requires not merely "minimally tolerable behavior," but "prudent, and ethical, legal and commercial actions." *SRI Int'l v. Advanced Tech. Lab.*, 127 F.3d 1462, 1464–65 (Fed.Cir.1997). In the case at bar, there was sufficient evidence from which the jury could conclude that the defendants failed to meet such a standard. For example, Safety 1st become aware of the '552 patent by September 28, 1999. Tr. 1055. Shortly thereafter, the defendants received a one-page letter from their patent attorney. Tr. 1219. The letter enclosed a copy of the '552 patent, but failed to discuss its application to the Bouncenette products. *Id.* The defendants solicited no other written legal opinion regarding possible infringement of the '552 patent until January 26, 2001, after the present suit was filed and some fifteen months after receiving notice of the '552 patent. Furthermore, it appears Safety 1st never obtained a written legal opinion regarding any of the other patents that were asserted in this suit.

The defendants simply have not presented the court with persuasive argument that the jury's finding of wilfulness was against the weight of the evidence such that a miscarriage of justice would result if the verdict were allowed to stand. As

---

**15.** It is noteworthy that the testimony of Professor Visser, Fisher–Price's witness regarding liability, did not necessarily contradict the jury's implied factual findings. For example, notwithstanding his ultimate conclusion of infringement, Visser testified that the three

components of the Bouncenette's support leg are connected when the product was in its useful state, Tr. 613, and that, when the Bouncenette is collapsed, the left and right sides of the support leg do not move independently. Tr. 612–13.

such, the defendants' motion for a new trial on this issue is denied.

### G. Motions for Reconsideration

Because the court, in eight post-trial motions, has exhaustively reexamined nearly every aspect of the jury's verdict, it will not entertain any motion for reconsideration regarding any part of this opinion or any of the two companion post-trial opinions.

## IV. CONCLUSION

For the aforementioned reasons, the court will not disturb the jury's verdict in any regard except as to literal infringement of claim 36 of the '552 patent by the Bouncenette 3. The court will grant the request by both the plaintiff and the defendant for a new trial on the issue of damages. In all other aspects, the motions by the parties are denied.

An order to this effect will issue in conjunction with this opinion.

### *ORDER*

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY ORDERED that:

1. The defendants' Renewed Motion for Judgment as a Matter of Law on Various Issues (D.I.312) is GRANTED IN PART and DENIED IN PART.

2. The defendants' Renewed Motion for Judgment of Invalidity of the '755 and '940 Patents as a Matter of Law Because of the On–Sale Bar (D.I.309) is DENIED.

3. The plaintiff's Motion for Enhanced Damages, Pre–Judgment Interest, Post–Judgment Interest, Attorneys' Fees and Literal Infringement of Claims 26, 27 and 32–34 of the '552 Patent and a New Trial on Certain Issues (D.I.302) is GRANTED IN PART and DENIED IN PART.

4. The defendants' Motion for a New Trial (D.I.306) is GRANTED IN PART and DENIED IN PART.

5. All other pending motions (D.I. 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 274, 275, and 297) are DENIED AS MOOT.